IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

Wish Atlanta, LLC,                     *

     Plaintiff,                       *

vs.                                    *
                                          CASE NO. 4:14-CV-00051 (CDL)
Contextlogic, Inc.,                    *

     Defendant.                       *

_____     *

O R D E R

    Plaintiff Wish Atlanta, LLC ("Wish Atlanta") sued Defendant
Contextlogic, Inc. ("Contextlogic") for trademark infringement,
trademark dilution, unfair competition, and deceptive trade
practices.     Presently    pending    before    the    Court    are
Contextlogic's motions to dismiss (1) for lack of personal
jurisdiction and (2) for improper venue.   In the alternative,
Contextlogic moves to transfer this action to the United States
District Court for the Northern District of California.   For the
following reasons, the Court denies all three motions (ECF No.
12).

APPLICABLE STANDARDS

    Under Federal Rule of Civil Procedure 12(b)(2), when a
plaintiff seeks to have a court exercise personal jurisdiction
over a nonresident defendant, that plaintiff "'bears the initial
burden of alleging in the complaint sufficient facts to make out

a prima facie case of jurisdiction.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).   If the defendant presents evidence challenging jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).   "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.*

Under Federal Rule of Civil Procedure 12(b)(3), the plaintiff bears the burden of proving that venue is proper. *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).   "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

FACTUAL BACKGROUND

The Court permitted the parties to engage in limited jurisdictional discovery to ascertain the full nature of Contextlogic's contacts with the state of Georgia.   The present

record reveals the following. The material facts are not disputed.

Contextlogic is a Delaware corporation with its principal place of business in San Francisco, California. Contextlogic's offices, employees, business records, and computer servers are all located in the San Francisco Bay Area. Contextlogic employs no one in Georgia and has never employed a person to travel to Georgia to conduct business on behalf of Contextlogic. Contextlogic does not own real property in Georgia. Contextlogic never registered to conduct business in Georgia nor had an agent for service of process in Georgia.

Contextlogic facilitates the sale of fashion merchandise through an online website and smart phone application. The website and application work the same way: consumers make "wish lists" of products they want to purchase and then purchase those products through Contextlogic. While Contextlogic facilitates the sale, Contextlogic does not directly sell the merchandise. Instead, third-party suppliers sell and ship the merchandise. In exchange for facilitating the sale between the consumer and the third-party supplier, Contextlogic receives a 10-15% fee from each sale. Originally, Contextlogic conducted business on a website with the domain name "www.wishwall.me." At a later date disputed by the parties (November 2011 or 2012), Contextlogic began operating under the domain name

3

"www.wish.com."   Compl. ¶ 7, ECF No. 1; Mem. in Supp. of Def.'s
Mot. to Dismiss Ex. A, Szulczewski Decl. ¶ 17, ECF No. 12-2.
The smart phone application is known as the "WISH app."   The
website and application are accessible worldwide.

　　　To facilitate its business, Contextlogic contracts with
eight suppliers located in Georgia to sell merchandise on
Contextlogic's website.   Consumers can register to use
Contextlogic's website, and 99,446 registered users reside in
the state of Georgia (0.38% of all users worldwide).   Of those
users, 3,982 reside in the Middle District of Georgia (0.0153%
of all users worldwide).   In the past year, Contextlogic
facilitated 16,731 transactions with Georgia consumers over its
website and smart phone application.   Of those transactions,
3,765 occurred in the Middle District of Georgia.   From the
transactions with Georgia consumers, Contextlogic sold
$506,669.58 in products (1.005% of all sales worldwide) and
derived $26,501.02 in revenue.   From the transactions with the
Middle District of Georgia alone, Contextlogic sold $139,946.13
in products (0.291% of all sales worldwide) and derived
$8,350.23 in revenue.

　　　Wish Atlanta, a Georgia corporation, conducts an online
fashion merchandise store similar to Contextlogic's store.   Wish
Atlanta owns a federal trademark to the "Wish" mark.   Wish
Atlanta has used the "Wish" mark in connection with its retail

store since 2004 and in its online store since February 2010. Wish Atlanta alleges that Contextlogic operates an online store that sells goods similar to those sold by Wish Atlanta while wrongfully using the "Wish" trademark.

DISCUSSION

## I.   12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

To determine whether Contextlogic is subject to personal jurisdiction in Georgia, the Court engages in a two-step analysis. *Diamond Crystal Brands*, 593 F.3d at 1257. First, the Georgia long-arm statute must permit the Court to exercise jurisdiction over Contextlogic. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). The Georgia long-arm statute is not coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Diamond Crystal Brands,* 593 F.3d at 1259. Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* If the long-arm statute confers jurisdiction, the second step is for the Court to evaluate whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Id.* at 1257-58.

5

A.   Georgia's Long-Arm Statute

Wish Atlanta relies on subsection (1) of the Georgia long-arm statute for jurisdiction.   Subsection (1) provides for jurisdiction if Contextlogic "[t]ransacts any business" within Georgia.   O.C.G.A. § 9-10-91(1).   In the alternative, Wish Atlanta contends that subsection (3) provides jurisdiction. Subsection (3) permits the Court to exercise jurisdiction if Contextlogic "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor . . . derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3).   Jurisdiction is proper pursuant to subsection (1), so analysis of subsection (3) is unnecessary.

In determining whether subsection (1) confers jurisdiction, the Court interprets the term "transacts any business" literally.   *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 675, 620 S.E.2d 352, 355 (2005).   The Eleventh Circuit defined "transacts any business" as "the doing of some act or consummation of some transaction." *Diamond Crystal Brands,* 593 F.3d at 1260.   "[U]nless and until the Georgia courts provide further authoritative guidance, courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business within this state' requirement of O.C.G.A. § 9-10-91(1)

according to the facts of each case." *Id.* at 1263 (second alteration in original).   Contextlogic "need not physically enter the state" to transact business in Georgia. *Id.* at 1264. Not only is physical presence unnecessary, but business transactions may be "conducted through . . . Internet contacts." *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 534, 680 S.E.2d 571, 576 (2009).   Subsection (1), however, "expressly depends on the *actual* transaction of business." *Diamond Crystal Brands,* 593 F.3d at 1260 (emphasis added).

Contextlogic facilitated more than 16,000 online transactions with Georgia consumers in the past year.   But Contextlogic argues that it did not transact business in Georgia because consumers do not purchase products directly from Contextlogic.   Instead, Contextlogic's website provides a platform for third-party suppliers to sell products, and Contextlogic receives 10-15% of each sale.   Neither the Eleventh Circuit nor any federal court within the circuit has addressed whether a corporation transacts business pursuant to subsection (1) when the corporation maintains a website that facilitates sales through third-party suppliers and the corporation receives compensation from each sale.

Following the Georgia Supreme Court's instruction to interpret the words "transacts any business" literally, the Court finds that Contextlogic transacts business in Georgia each

time it derives income from Georgia consumers by providing a service in exchange for compensation. *See Innovative Clinical & Consulting*, 279 Ga. at 675, 620 S.E.2d at 355 ("[W]e must give the same literal construction to subsection (1) of OCGA § 9-10-91 that we give to the other subsections."). Contextlogic provides a website that allows Georgia consumers to develop a list of products they want to purchase, and it facilitates the purchase of those products from third-party suppliers. In exchange for providing this service, Contextlogic retains a 10-15% transaction fee from each sale. Such online sales to Georgia consumers, from which Contextlogic derived more than $26,000 in annual revenue, constitute transacting business under subsection (1).

Contextlogic relies heavily on the Court's previous order in *Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC*, 819 F. Supp. 2d 1338, 1343-44 (M.D. Ga. 2011), where the Court determined that merely maintaining a website does not constitute transacting business in Georgia under subsection (1). The crucial fact in *Jordan Outdoor Enterprises*, however, was that "Defendants did not sell any products to Georgia residents through the internet," and thus "the websites failed to generate any business for Defendants in Georgia." *Id.* at 1343. By contrast, in the past year Contextlogic facilitated 16,731 transactions in Georgia, generated $506,669.58 from those sales,

and derived $26,501.02 in revenue from those sales.  It makes no difference that consumers purchase the products from third-party suppliers, rather than Contextlogic directly, because Contextlogic derives revenue from each sale.  Because Contextlogic engaged in business transactions over its website, this action differs from *Jordan Outdoor Enterprises*.

In sum, Contextlogic transacted business in Georgia for purposes of subsection (1), so the Court may exercise jurisdiction under the long-arm statute.

B.   Constitutional Due Process

Since the long-arm statute confers jurisdiction, the Court must next ensure that the assertion of jurisdiction does not offend Contextlogic's due process rights.  *Diamond Crystal Brands,* 593 F.3d at 1257-58.  To comply with due process, Contextlogic must have "'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Minimum contacts exist if Contextlogic has a "fair warning" that it may be sued in the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted).  "Once this showing is made, a defendant must make a 'compelling case' that the exercise of

jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands,* 593 F.3d at 1267 (quoting *Burger King Corp.*, 471 U.S. at 477).

The due process analysis differs depending on whether the Court asserts general or specific jurisdiction. "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them" regardless of whether those claims relate to the corporation's contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Specific jurisdiction, by contrast, only exists when the claims "relate[] to or 'arise[] out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 (quoting *Shaffer*, 433 U.S. at 204). Wish Atlanta argues that the Court may exercise both general and specific jurisdiction over Contextlogic.

1. *General Jurisdiction*

Contextlogic is subject to general jurisdiction in Georgia only if its contacts are "so 'continuous and systematic' as to render [Contextlogic] essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Wish Atlanta argues that Contextlogic is subject to general jurisdiction in Georgia "and probably in most, if not all 50 states" because Contextlogic maintains a nationwide

website.   Pl.'s Resp. to Def.'s Mot. to Dismiss 5, ECF No. 15. Specifically, Wish Atlanta argues that Contextlogic's contacts with Georgia—including the number of registered users (99,446), transactions (16,731 per year), and suppliers (8) in Georgia— subject it to general jurisdiction.

Wish Atlanta vastly overstates the effect of Contextlogic's contacts.   Contextlogic's contacts with the forum are insufficient to make it "at home" in Georgia. *Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2851.   In *Goodyear*, the United States Supreme Court instructed that the "paradigm bases for the exercise of general jurisdiction" over a corporation are the entity's (1) principal place of business and (2) place of incorporation.   *Id.* at 2854 (internal quotation marks omitted). The Supreme Court recently clarified that general jurisdiction over a corporation is *exclusive* to these two bases; calling it "unacceptably grasping" for a court to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014) (internal quotation marks omitted).   Contextlogic is neither incorporated nor makes its principal place of business in Georgia.   Therefore, Contextlogic is not subject to general jurisdiction in Georgia. *Id.*

2.   *Specific Jurisdiction*

For Contextlogic to be subject to specific jurisdiction, Contextlogic must purposefully avail itself of the forum. *Diamond Crystal Brands,* 593 F.3d at 1267.   Additionally, Contextlogic's contacts with the forum must relate to the subject matter of the litigation.   *Id.*   If these two requirements are met, the assertion of jurisdiction over Contextlogic will not offend due process because Contextlogic "'should reasonably anticipate being haled into court there.'" *Oldfield*, 558 F.3d at 1221 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

a.   PURPOSEFUL AVAILMENT OF THE FORUM

The Eleventh Circuit has not decided "whether a non-resident defendant electronically transmitting, or enabling the transmission of, information via the Internet subjects himself to the personal jurisdiction of the forum where plaintiff encountered the electronic information."   *Oldfield,* 558 F.3d at 1219 n.26.   One influential standard for measuring internet contacts is set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).   Although the Eleventh Circuit has yet to endorse or reject the *Zippo* test, many other circuits have adopted it.   *See, e.g., ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.

1999).  Circuits not using the *Zippo* test use a traditional contacts analysis instead.  *See*, *e.g.*, *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758-59 (7th Cir. 2010).  The Court may assert jurisdiction under both tests, as discussed below.

The *Zippo* test sets forth a sliding scale for determining whether internet contacts suffice to create jurisdiction.  On one end of the scale are "situations where a defendant clearly does business over the Internet." *Zippo Mfg. Co.*, 952 F. Supp. at 1124.  In these cases, personal jurisdiction is proper.  *Id.* At the other end of the scale are "situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions."  *Id.*  These "passive" websites are "not grounds for the exercise of personal jurisdiction."  *Id.*  In the middle of these two extremes are "interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."  *Id.*

This action falls in the first category.  As discussed above, Contextlogic does business in Georgia over the internet. Under the test set forth in *Zippo*, Contextlogic is subject to jurisdiction here.

The Court reaches the same result under a traditional contacts analysis. The focus, for purposes of this analysis, is on whether Contextlogic purposefully reached out to the forum state. In the context of internet sales, persuasive authority suggests that a corporation purposefully avails itself of a forum when the corporation derives revenue from the forum state, even when that revenue represents only a small percentage of the corporation's total annual revenue. *See, e.g.*, *Hemi Grp., LLC*, 622 F.3d at 755, 757 (finding minimum contacts from an online purchase of 300 packets of cigarettes, a small percentage of the defendant's overall business); *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1367 (N.D. Ga. 2013) (1-2% of annual revenue); *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 516, 523-24, 631 S.E.2d 734, 736, 740-41 (2006) (0.5% of annual revenue).

In the past year, Contextlogic derived $26,501.02, or 1.005%, of its revenue from Georgia. Additionally, Contextlogic has eight suppliers in Georgia and engaged in 16,731 transactions in Georgia in the past year. Because of these contacts, Contextlogic should "'reasonably anticipate being haled into court'" in Georgia. *Oldfield*, 558 F.3d at 1221 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

Contextlogic urges the Court to focus on the percentage of revenue that Contextlogic derived from the state of Georgia compared to its overall, worldwide sales. Because Contextlogic

14

derived only 1.005% of its revenue from Georgia, Contextlogic argues that it does not have minimum contacts with Georgia. In limited contexts, courts have found that minimum contacts do not exist when a corporation receives only a small percentage of its revenue from the forum. *See, e.g.*, *Wolfson v. Houston Post Co.*, 441 F.2d 735, 736 (5th Cir. 1971) (per curiam); *New York Times Co. v. Connor*, 365 F.2d 567, 570 (5th Cir. 1966). The Court, however, finds this precedent limited to libel suits against the press. In the context of libel lawsuits against newspaper publications, "First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity." *Connor*, 365 F.2d at 572. Because of the need for greater contacts in such cases, a news publication that derives only a small percentage of its revenue from the forum lacks sufficient contact with the forum. But Contextlogic is not a news publication, and this is not a libel action, so the Court does not hesitate to exercise jurisdiction merely because Contextlogic derives a small amount of revenue from Georgia compared to its overall sales.

In the same vein, Contextlogic relies heavily on *Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367 (N.D. Ga. 2009). In *Imageline*, a court refused to subject an out-of-state corporation to jurisdiction in Georgia solely because the

corporation derived a small percentage of its revenue from online sales to Georgia consumers. *Id.* at 1377-78. Contextlogic, however, has far greater contact with Georgia then the defendant in *Imageline*. In *Imageline*, the defendant derived less than one percent of its revenue from sales in Georgia *since its inception*, whereas Contextlogic received more than one percent of its revenue from Georgia in the *past year*. *Id.* at 1370-71, 1377-78. Additionally, Contextlogic has contacts with Georgia that simply did not exist in *Imageline*, including relationships with eight Georgia suppliers and facilitating more than 16,000 transactions in Georgia in the past year. These contacts suffice to put Contextlogic on notice that it may be sued in Georgia.

b.   RELATION TO THE SUBJECT MATTER

Since Contextlogic has purposefully availed itself of the privilege of conducting business in Georgia, the Court next must decide whether Wish Atlanta's claims relate to Contextlogic's contacts with Georgia. "Unlike other courts, [the Eleventh Circuit] ha[s] not developed or adopted a specific approach to determining relatedness; instead, [the Eleventh Circuit] ha[s] heeded the Supreme Court's warning against using 'mechanical or quantitative' tests." *Oldfield*, 558 F.3d at 1222 (quoting *Int'l Shoe Co.*, 326 U.S. at 319).

Wish Atlanta brings claims for trademark infringement, trademark dilution, unfair competition, and deceptive trade practices.  Each claim requires Wish Atlanta to show that Contextlogic in some way used the "Wish" mark or a mark closely resembling the "Wish" mark.  15 U.S.C. § 1125(a); 15 U.S.C. § 1125(c); O.C.G.A. § 10-1-451; O.C.G.A. § 10-1-452; O.C.G.A. § 10-1-372; O.C.G.A. § 10-1-373.  Wish Atlanta contends that Contextlogic operated its website using the "Wish" mark and, as a result, Georgia consumers unsatisfied with purchases made through Contextlogic's website mistakenly called Wish Atlanta to complain.  Wish Atlanta's infringement claims are based in part on complaints received from Contextlogic's confused customers.  Thus, Wish Atlanta's claims relate to Contextlogic's contacts with Georgia.

*3.   Fair Play and Substantial Justice*

Because the Court finds that Contextlogic has minimum contacts with Georgia, the burden now shifts to Contextlogic to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.  The Eleventh Circuit has outlined five factors to guide determining whether jurisdiction is unfair to Contextlogic: (1) the "'burden on the defendant'" in defending the lawsuit, (2) "'the forum State's interest in adjudicating the dispute,'" (3) "'the plaintiff's interest in

17

obtaining   convenient   and   effective   relief,'"   (4)   the
"'interstate   judicial   system's   interest   in   obtaining   the   most
efficient   resolution   of   controversies,'"   and   (5)   "'the   shared
interest   of   the   several   States   in   furthering   fundamental
substantive   social   policies.'"   *Diamond Crystal Brands*, 593 F.3d
at 1274 (quoting *Burger King Corp.*, 471 U.S. at 477).

Contextlogic's   only   argument   regarding   fairness   concerns
the first factor.   Contextlogic argues that it would face a "not
insubstantial burden" if required to defend itself in Georgia,
which is "more than 2,000 miles away from its San Francisco
offices."   Mem. in Supp. of Def.'s Mot. to Dismiss 10, ECF No.
12.   Contextlogic, however, makes no attempt to explain how the
distance poses a burden.   Further, it is not uncommon to require
an out-of-state corporation to defend itself in a forum located
across the country.   *See, e.g.*, *Diamond Crystal Brands,* 593 F.3d
at 1274 (requiring a California corporation to defend itself in
Georgia).   Thus Contextlogic fails to make a "compelling case"
that "jurisdiction [is] unreasonable." *Burger King Corp.*, 471
U.S. at 477.

## II.  12(b)(3) Motion to Dismiss for Improper Venue

28 U.S.C. § 1391(b)(1) provides that "[a] civil action may
be brought in . . . a judicial district in which any defendant
resides, if all defendants are residents of the State in which
the district is located."   A corporate defendant resides "in any

district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

Wish Atlanta argues that venue is proper in this Court because Contextlogic's contacts with the Middle District of Georgia, though "not as extensive as they are to the entire state," are "still, nonetheless significant." Pl.'s Resp. to Def.'s Mot. to Dismiss 6. Contextlogic, by contrast, again focuses on the percentage of business conducted in the Middle District of Georgia compared to the company's worldwide sales. From that perspective, only 0.291% of Contextlogic's sales and 0.0153% of its registered users come from this District.

To be sure, Contextlogic's contacts with this District represent a comparatively small percentage of Contextlogic's overall business. The contacts, however, far exceed the "random, fortuitous, or attenuated" types that require dismissal for improper venue. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990). Contextlogic facilitated 3,765 transactions for the sale of goods in this District over the past year. Through these transactions, Contextlogic sold $139,946.13 in merchandise and derived $8,350.23 in revenue. Finally, 3,982 registered users of Contextlogic's website reside in this District. Based on Contextlogic's contacts with this District alone, the Court could assert jurisdiction over Contextlogic. Contextlogic thus

19

resides in this District and the Court denies the motion to dismiss for improper venue.

**III. Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)**

As an alternative to dismissal, Contextlogic asks the Court to transfer this action to the United States District Court for the Northern District of California. 28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991). Federal courts usually give substantial deference to the plaintiff's choice of forum, so the movant bears the burden of persuading the Court that its proposed forum is more convenient than the current forum. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam) (explaining the traditional burden for § 1404(a) transfer).

A.   Where this Action "Might Have Been Brought"

The first issue is whether Wish Atlanta "might have . . . brought" this action in the Northern District of California. 28 U.S.C. § 1404(a). Both parties agree that Wish Atlanta could have originally sued Contextlogic in the Northern District of California. The Northern District of California may properly

exercise subject matter jurisdiction, personal jurisdiction, and venue because this action alleges violations of federal law and Contextlogic's principal place of business is in San Francisco. In sum, there is no dispute that this action could have originated in the Northern District of California.

B.   Convenience of the Parties and Witnesses and the Interest of Justice

Second, the "convenience of the parties and witnesses" and the "interests of justice" must favor transfer.   28 U.S.C. § 1404(a).   The Court considers nine factors in making this determination:

> (1) [T]he convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

1.   *Neutral Factors*

Most of the § 1404(a) factors are neutral.   As to the convenience of the witnesses (factor 1), the majority of Contextlogic's witnesses reside in San Francisco or the surrounding area, so the Northern District of California would be most convenient for them.   Wish Atlanta, however, intends to

call witnesses that, if "not in [the Middle District of Georgia] . . . are in Atlanta, a short drive away." Pl.'s Resp. to Def.'s Mot. to Dismiss 7. The Court finds that it may be more convenient for Wish Atlanta's witnesses to travel to the Middle District of Georgia than to the Northern District of California. Travel will inconvenience some witnesses regardless of which venue adjudicates this dispute, so the Court finds this factor neutral.

For the same reason, the Court finds the convenience of the parties (factor 3) is also neutral. Regardless of which forum adjudicates this action, either Contextlogic or Wish Atlanta will travel a long distance. Because travel will inconvenience one party either way, the Court finds this factor neutral.

As to the location of relevant documents (factor 2), Wish Atlanta's trademark registration documents are in Columbus, Georgia while Contextlogic's corporate records are in San Francisco, California. Due to the prevalence of electronic discovery, the location of these documents is largely insignificant. But, because some documents are located in both venues, the Court finds factor 2 neutral.

Contextlogic claims the availability of process to compel the attendance of unwilling witnesses (factor 5) weighs in favor of transfer. Contextlogic no longer employs some of its witnesses, and so Contextlogic argues that service of process is

not available to compel them to appear live in the Middle
District of Georgia. But those witnesses who cannot be
compelled to travel to the Middle District of Georgia can
certainly be compelled to provide testimony by deposition at
their places of residence. And that deposition testimony for
any unavailable witnesses may be used by Contextlogic instead of
live testimony. Fed. R. Civ. P. 32(a)(4)(B). Thus, this factor
is neutral. Additionally, the parties presumably have similar
relative means (factor 6) and both the Northern District of
California and the Middle District of Georgia are equally
familiar with the governing law (factor 7).

   2.  *Factors Favoring Transfer*

   Only the locus of operative facts (factor 4) favors
transfer. When trademark infringement occurs over the internet,
the operative facts concentrate where the website was created.
"Even if infringement occurred in Georgia as a result of Georgia
residents viewing the infringing marks on Defendants' websites
. . . the conduct giving rise to the infringement occurred
. . . where Defendants created the websites." *Jordan Outdoor
Enters., Ltd.*, 819 F. Supp. 2d at 1345; *accord Paradise Media
Ventures, LLC. v. Mills*, Civil Action file No. 1:13-CV-1003,
2013 WL 6388627, at *3 (N.D. Ga. Dec. 5, 2013) ("When the
tortious conduct occurs over an Internet website, the situs of
this tort is considered to be where the website, or servers

which maintain the website, are located.") (internal quotation marks omitted).   Wish Atlanta alleges that Contextlogic wrongfully used the "Wish" mark on Contextlogic's website, which was created in San Francisco.   So the locus of operative facts is in San Francisco.   Thus, this factor weighs in favor of transfer.

### 3.   Factors Against Transfer

While the locus of operative facts favors transfer, the weight accorded a plaintiff's choice of forum (factor 8) militates against transfer.   Traditionally, courts give considerable deference to the plaintiff's choice of forum.   *In re Ricoh Corp.*, 870 F.2d at 573.   But "this factor is entitled to less deference when the operative facts are centered outside of this district *and* when the plaintiff[] do[es] not reside here or in close proximity to this district."   *Polyform A.G.P. Inc. v. Airlite Plastics Co.*, No. 4:10-CV-43 (CDL), 2010 WL 4068603, at *7 (M.D. Ga. Oct. 15, 2009) (emphasis added).   Wish Atlanta is located near this District, in Atlanta.   So the Court will not discount Wish Atlanta's choice of forum.   Thus, deferring to Wish Atlanta's choice of forum, factor 8 weighs strongly in favor of adjudicating the dispute in this District.

### 4.   Summary

In sum, one factor weighs in favor of transfer, and one factor weighs against transfer.   All other factors are neutral.

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superseded by statute as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994). Though the locus of operative facts is primarily in San Francisco, in our internet age, the trademark injury Wish Atlanta complains of occurs nationwide. Due to the nationwide injury Wish Atlanta claims to suffer, and the deference the Court must give Wish Atlanta's choice of forum, the Court finds that Contextlogic failed to carry its burden of convincing the Court that the factors weigh "strongly in favor of the defendant." *Id.* The Court denies Contextlogic's motion to transfer venue.

CONCLUSION

As discussed above, the Court denies Contextlogic's motions to dismiss and motion to transfer venue. (ECF No. 12).

Counsel for the parties shall confer and provide the Court by October 27, 2014 with a jointly proposed scheduling order consistent with Rules 16 and 26 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED, this 9th day of October, 2014.

S/Clay D. Land
CLAY D. LAND, CHIEF JUDGE
UNITED STATES DISTRICT COURT