IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WISH ATLANTA, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE NO. |
| v. ) | |
| ) | 4:14-CV-00051-CDL |
| CONTEXTLOGIC, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF CONTEXTLOGIC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Wish Atlanta, LLC ("Wish Atlanta"), holds a federal registration for the following design mark:



Wish Atlanta uses this mark (the "Wish Atlanta Mark") in connection with its sale of "Street Wear" clothing, sportswear and accessories targeted to African American males in the Atlanta market through a "brick and mortar" store located in Atlanta and through the website www.wishatl.com. (Statement of Facts, ¶¶ 2-5).[1]

Defendant, Contextlogic, Inc. ("Contextlogic"), holds a federal registration for the mark WISH®. (Statement of Facts, ¶ 26).  Contextlogic offers an application (the "Wish App") downloadable to a PDA, such as a smart phone. (Statement of Facts, ¶ 11).  Contextlogic offers

---

[1] Contextlogic's Statement of Facts in Support of Its Motion for Partial Summary Judgment [hereinafter "Statement of Facts] is being filed with this Motion.  In addition, Contextlogic is filing an Appendix and a Confidential Appendix that include deposition excerpts, exhibits and other papers that serve as a basis for the facts set out in the Statement of Facts.

a wide variety of services though the Wish App, including the ability to create a "wish list" of items the user would like to own, and product recommendations. (Statement of Facts, ¶ 16). Users may also purchase everything from electronics to clothing to a kitchen sink through the Wish App. (Statement of Facts, ¶ 17). Contextlogic also has a website, located at www.wish.com (the "Wish Website") that offers much of the functionality of its Wish App. (Statement of Facts, ¶¶ 16-17).

Wish Atlanta has filed a multi-count complaint accusing Contextlogic of federal trademark infringement, federal trademark dilution, fraud on the United States Patent and Trademark Office, and various state law claims. This complaint was prompted after Wish Atlanta allegedly received telephone calls that were meant for Contextlogic. Wish Atlanta seeks to use these allegedly misdirected telephone calls as a basis for, among other things, broad injunctive relief, an award of all of Contextlogic's profits to Wish Atlanta, punitive damages and an award of attorneys' fees. Discovery closed on April 21, 2015. Based on evidence disclosed during discovery, and the absence of evidence to support many of Wish Atlanta's claims, it is apparent that a number of claims and issues are ripe for summary judgment. They are:

1. Count Three of the Complaint for federal trademark dilution under 15 U.S.C. 1125(c) because the Wish Atlanta Mark is not famous;

2. Count Nine of the Complaint for cancellation of Contextlogic's U.S. Trademark Reg. No. 4,340,974 because there is no evidence that Contextlogic committed fraud on the United States Patent and Trademark Office in obtaining that registration;

3. Counts One, Two, Four, Five, Six of the Complaint to the extent those counts seek money damages from Contextlogic because there is no evidence to support such a claim;

4. Counts One and Two of the Complaint to the extent those counts seek an award of Contextlogic's profits because there is no evidence to support such a claim;

5. Count Seven of the Complaint seeking an award of expenses and attorneys' fees because there is no evidence that would entitle Wish Atlanta to recover either expenses or attorneys' fees; and

6. Counts One, Two and Five of the Complaint to the extent that those counts seek enhanced or punitive damages because there is no evidence that would entitle Wish Atlanta to recover those enhanced or punitive damages.

As set forth in more detail below, summary judgment should be entered on these issues.

## I.    WISH ATLANTA'S WISH DESIGN MARK IS NOT A FAMOUS MARK ELIGIBLE FOR PROTECTION UNDER THE FEDERAL TRADEMARK DILUTION ACT.

Count Three of Wish Atlanta's complaint alleges that Contextlogic has violated the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c), based on its alleged use of the Wish Atlanta Mark.  This claim fails because the Wish Atlanta Mark is not a famous mark.

The FTDA protects only "famous marks."  "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  The FTDA is reserved for a select class of marks – those marks with such powerful consumer associations that even non-competing uses can impinge their value.  *Everest Capital Limited v. Everest Fund Management, LLC,* 393 F.3d 755, 763 (8th Cir. 2005) (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) and holding that "Everest" was not a famous mark).  A famous mark must be so firmly established that it is a "household name."  *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002).   Examples of famous marks include Exxon, Kodak and Coca-

3

Cola. *Michael Caruso & Co., Inc. v. Estafan Enter., Inc.*, 994 F. Supp. 1454, 1463 (S.D. Fla. 1998), aff'd, 166 F.3d 353 (11th Cir. 1998).

The bar for establishing a mark to be a "famous mark" is extraordinarily high. A "famous mark," must "engender immediate recognition in the general public." *Michael Caruso & Co., Inc.*, 994 F. Supp. at 1463; *It's a 10, Inc. v. Beauty Elite Group, Inc.*, 2013 WL6834804 at *8 (S.D. Fla. Dec. 23, 2013) (same). This notoriety must extend throughout the general consuming public, not merely to a segment of the population. *Michael Caruso & Co.*, 994 F. Supp. at 1463 ("while BONGO may be a distinctive mark in the junior women's apparel market, it is not a generally famous mark like 'Exxon' or 'Kodak.'").

In this case, Wish Atlanta's own evidence establishes the lack of fame in its mark. To establish fame, the owner of the mark must establish that it has devoted extensive resources to the advertising and promotion of its mark. For example, in *It's a 10, Inc. v. Beauty Elite Group*, the court dismissed plaintiff's trademark dilution claim on summary judgment even though plaintiff asserted "that it has spent millions on advertising over the past few years, that its product is one of the 'nation's top-selling leave-in [hair] conditioners,' that it has received numerous industry awards, and that its sales top $50 million per year." Such use was insufficient to establish fame in the mark. 2013 WL6834804 at *6. By comparison, Wish Atlanta has spent little on advertising and promotion of the Wish Atlanta Mark, and has sales that do not come close to the sales found inadequate to establish a famous mark in *It's a 10, Inc.* (Statement of Facts, ¶¶ 6, 7; Confidential Appendix at Tabs 1 and 2).

In addition, a famous mark must typically have been in use for several years before becoming famous. *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1270 (S.D. Fla. 1999) (use of the FUN SHIP mark for over 25 years, and "millions of dollars

4

[spent] promoting the mark nationally" insufficient to establish FUN SHIP as a famous mark). Wish Atlanta has only used the Wish Atlanta Mark since 2004. (Statement of Facts, ¶ 3).

Perhaps most telling evidence of lack of fame in Wish Atlanta's mark is the market survey it commissioned. A majority of households must recognize the mark and its source for the mark to warrant "famous mark" protection. *Michael Caruso & Co., Inc., supra, Carnival Corp.,* 74 F. Supp. 2d at 1270 (evidence that 58% of those surveyed associated the mark FUN SHIP with Carnival was insufficient to establish fame in the FUN SHIP mark). In this case, Wish Atlanta commissioned a consumer survey. That survey focused on "the target market for 'Street Wear' clothing and sportswear in the Atlanta market, namely African American males over 18." (Statement of Facts, ¶ 9, Maronick Report, App. Tab 6 at p. 3). That survey found that only 13% of respondents associated the word mark WISH with Wish Atlanta. (*Id*., Maronick Report at p. 8). This falls well short of the recognition required in federal dilution cases. *Carnival Corp., supra.*

Moreover, the 13% association is based on a narrow segment of the overall U.S. consuming public – African American males over 18 in the Atlanta market. The test for fame is not fame among the market segment cherry-picked by the plaintiff. Rather, the test is for fame across the American consuming public. *Michael Caruso & Co., Inc., supra*; *Unique Sports Products, Inc. v. Babolat VS*, 403 F. Supp. 2d 1229, 1243-44 (N.D. Ga. 2005) (refusing to extend famous mark protection to light blue color for tennis racket handles because any potential fame was restricted to the tennis market). Wish Atlanta has failed to produce any evidence suggesting that the Wish Atlanta Mark is famous among the general consuming public. It logically follows that recognition among the general consuming public would be radically lower than recognition is the market segment identified by Wish Atlanta. In addition, the survey was conducted on the

5

word "wish," not on the Wish Atlanta Mark, which is a design mark on which Wish Atlanta has obtained a federal registration. (Statement of Facts, ¶¶ 2, 3). Recognition of the Wish Atlanta Mark, which is the mark at issue in this case, among the market segment identified by Wish Atlanta logically would be smaller than the already paltry 13% recognition that the consumer survey purports to show.

For all of these reasons, Count Three of the Complaint should be dismissed.

## II. CONTEXTLOGIC HAS NOT COMMITTED FRAUD ON THE UNITED STATES PATENT AND TRADEMARK OFFICE.

Count Nine of Wish Atlanta's complaint seeks cancellation of Contextlogic's federal registration of the trademark WISH®, Reg. No. 4,340,974 (the "Contextlogic Mark"). Pursuant to 15 U.S.C. § 1064(3), a registration may be cancelled if it was obtained fraudulently. A court is empowered to order cancellation of registrations under 15 U.S.C. § 1119.

The trademark application maturing into the Contextlogic Mark was filed with the United States Patent and Trademark Office ("USPTO") on March 27, 2012. The application was filed without any knowledge by Contextlogic of Wish Atlanta or the Wish Atlanta Mark. (Statement of Facts, ¶ 27). Contextlogic only became aware of Wish Atlanta and its mark after receiving the cease and desist letter leading to this lawsuit. (*Id*).

The description of goods and services Contextlogic identified in its trademark application was:

> advertising and promotional services; online advertising and marketing services; promoting the goods and services of others via a global computer network; contests and incentive award programs to promote the sale of products and services of others; gift registry services; providing a web site where users can post recommendations on products and services; providing an online marketing collaboration network for social media and online marketing professionals.

(App. Tab 7 at p. 8).

After Contextlogic filed its trademark application, the Examiner objected to two portions of the description of goods proffered by Contextlogic, "advertising and promotional services; online advertising and marketing services" and "providing an online marketing collaboration network for social media and online marketing professionals." Her objection was based on a prior registration for the mark WWISH, which she believed to contain similar descriptions of services. (Statement of Facts, ¶ 23, App. Tab 7 at 13-14). She did not cite or make reference to Wish Atlanta or the Wish Atlanta Mark in the Office Action she issued. (*Id.*).

In order to overcome the Examiner's objection, Contextlogic dropped the two portions of its description of goods and services to which the Examiner had objected. (Statement of Facts, ¶ 25, App. Tab 7 at 23-25). A registration then issued to Contextlogic for the word mark WISH® for use in connection with the goods and services remaining in the description of goods. (Statement of Facts, ¶ 26, App. Tab 8).

Wish Atlanta accuses Contextlogic of fraud on the USPTO for deleting from the description of goods those goods and services to which the Trademark Examiner objected. (Complaint, Dkt. 1 at 10 ¶ 45). The standard to establish fraud on the USPTO is high:

> An applicant commits fraud when he "knowingly makes false, material representations of fact in connection with an application for a registered mark." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008). Fraud further requires a purpose or intent to deceive the PTO in the application for the mark. *In re Bose Corp.*, 580 F.3d 1240, 1243, 1245 (Fed. Cir. 2009); *see also Angel Flight*, 522 F.3d at 1210-11 (affirming cancellation on the basis of the applicant's purposeful failure to disclose a superior user of the mark). The party seeking cancellation on the basis of fraud must prove its claim by clear and convincing evidence. *Angel Flight*, 522 F.3d at 1209. This is necessarily a heavy burden, and "any doubt must be resolved against the charging party." *Bose*, 580 F.3d at 1243.

*Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 702 F.3d 1279, 1289 (11th Cir. 2012).

7

There was no fraud here. First, there was no false, material representation of fact. There is no requirement that an applicant for a registered trademark seek a registration for each and every good or service that he or she may offer. "The applicant *may apply* to register a mark *for any or all* of the goods or services on or in connection with which he or she is using or has a bona fide intention to use the mark in commerce." 15 U.S.C. § 1112 (emphasis added). Moreover, by dropping the two sets of services included in its initial trademark application, Contextlogic was not representing that it would no longer offer those services. It was merely removing those services from the scope of services on which it was seeking to claim registered trademark protection. This is such a common practice before the USPTO that there is an entire section in the Trademark Manual of Examining Procedure identifying the procedure for deleting goods and services from the identification of goods and services during the examination process. TMEP § 1402.06(a). (App. Tab 9). In fact, if the applicant does not affirmatively delete the goods and services objected to by the Examiner, those goods and services will be deleted as a matter of course before a registration issues. TMEP § 718.02(a) ("Partial Abandonment"). (App. Tab 9). In light of these rules, no fraud can be implied by Contextlogic's actions before the USPTO.

Second, there is no evidence of "a purpose or intent to deceive the PTO in the application for the mark." *Sovereign Military Hospitaller Order*, 702 F.3d at 1289. Indeed, the initial application included a description of goods and services that, if it had been accepted by the Trademark Examiner, would have given Contextlogic registered trademark protection for the mark WISH® in connection with the sale of goods over the internet. Contextlogic hid nothing from the Examiner, and there is certainly no evidence of a purpose or intent to deceive on the part of Contextlogic.

8

Third, Wish Atlanta cannot prove its claims of fraud by the clear and convincing evidence required by the Eleventh Circuit. *Sovereign Military Hospitaller Order*, 702 F.3d at 1289 (plaintiff must prove its claim of fraud by clear and convincing evidence). For this and the reasons setout above, Count Nine of Wish Atlanta's complaint must be dismissed.

### III.   WISH ATLANTA'S CLAIM FOR COMPENSATORY DAMAGES SHOULD BE DISMISSED.

Wish Atlanta seeks compensatory damages under Counts One and Two of its complaint, alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1125, *et seq.*, and compensatory and punitive damages "under Georgia law." (ECF 1 at 13).[2]

To recover compensatory damages under the Lanham Act, the plaintiff must show that it suffered actual damages. *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.,* 2006 WL 1663357 (N.D. Ga. 2006) at *3. Plaintiff must prove both lost sales and that the loss was caused by defendant's actions. *Playboy Enterprises, Inc. v. P.K. Sorren Export Co., Inc.*, 546 F. Supp. 987, 998 (S.D. Fla. 1982) (citing *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 587 (5th Cir. 1980)). Loss of reputation alone is insufficient to justify a separate award of damages. *Id*.

Here, Wish Atlanta cannot establish any sales lost as a result of Contextlogic's activities. It has explicitly admitted as much. (Statement of Facts, ¶¶ 33-35). It failed to identify any such lost sales in its Initial Disclosures, in response to a specific interrogatory directed to lost sales, and in deposition. (*Id*.). Indeed, Wish Atlanta's sales have actually increased during the same time that Contextlogic has offered its Wish App. (Statement of Facts, ¶ 36). As a result, Wish Atlanta's claim for compensatory damages under its Lanham Act claims should be dismissed.

---

[2] Count Three, alleging trademark dilution under 15 U.S.C. §1125(c), does not seek monetary damages of any type.

No compensatory damages are available under Wish Atlanta's state law statutory claims raised in Counts Four and Six of its complaint. *See* O.C.G.A. § 10-1-451(b) (allowing the court to enter injunctive relief in appropriate cases); O.C.G.A. § 10-1-373 (allowing the court to enter injunctive relief, award costs and, in appropriate cases, attorney's fees). So, to the extent that Wish Atlanta has a claim for money damages it must arise under Count Five of its complaint, a claim for common law unfair competition.

Contextlogic has found no cases addressing the precise measure for compensatory damages arising under a state law unfair competition claim. However, those claims arise under the same allegations that serve as a basis for Count Two of Wish Atlanta's complaint, alleging unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As shown above, claims for compensatory damages arising under that claim are without merit because Wish Atlanta cannot establish either lost sales to Contextlogic or that lost sales were a result of Contextlogic's misconduct. Claims for compensatory damages under Georgia state trademark and unfair competition law follows these same general principles. *See Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, 2003 WL 22331254 at *29 n.4 (N.D. Ga. May 9, 2003) (holding that separate analysis to determine whether liquidated damages were appropriate under Georgia trademark statute was unnecessary because, citing *University of Georgia Athletic Assoc. v. Laite*, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985), "the standards to be applied under the Lanham Act are similar, if not identical, to those to be applied under Georgia's trademark laws."). As a result, Wish Atlanta's claim for compensatory damages arising from its state law claims should be dismissed on summary judgment.

## IV. WISH ATLANTA'S CLAIM FOR AN ACCOUNTING OF CONTEXTLOGIC'S PROFITS BASED ON SALES THAT CONTEXTLOGIC HAS MADE UNDER ITS WISH® MARK SHOULD BE DISMISSED.

Wish Atlanta also seeks an accounting of Contextlogic's profits under 15 U.S.C. §1117. (ECF 1 at 13).  An accounting for profits may be an element of relief arising from a successful claim for trademark infringement under 15 U.S.C. §1125(a) (Count One of the Complaint), federal unfair competition (Count Two) and, if it were to survive summary judgment, federal trademark dilution (Count Three).

An accounting for profits is appropriate where:  (1) the defendant's conduct is a deliberate and willful violation of plaintiff's rights; (2) the infringer is unjustly enriched; or (3) the sanction is necessary for future deterrence.  *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990).  There is no evidence supporting an award of profits for any of these reasons.

Willfulness is evidenced when the defendant is "knowingly and deliberately cashing in upon the good will" of the trademark owner.  *Optimum Technologies, Inc. v. Home Depot USA, Inc.*, 2005 WL 3307509 at *3 (N.D. Ga. Dec. 5, 2006) (granting partial summary judgment in defendant's favor on plaintiff's claim for defendant's profits, citing *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988)), *aff'd*, 217 Fed. Appx. 899 (11th Cir. 2007).   In this case, there is no evidence that Contextlogic "knowingly and deliberately cash[ed] in upon the good will" of Wish Atlanta.  Contextlogic was unaware of Wish Atlanta and the Wish Atlanta Mark at the time that it adopted its own WISH® mark.  (Statement of Facts, ¶ 27).  Contextlogic uses an entirely different logo and presentation in the use of its WISH® mark as compared to Wish Atlanta's use of its Wish Mark.  (Statement of Facts, ¶¶ 2, 12 and exhibits to App. Tab 10).  All of these facts establish that there has been no "deliberate and willful violation" of whatever

11

rights Wish Atlanta may have in its Wish Atlanta Mark. As a result, summary judgment should be entered in Contextlogic's favor on this point. *Optimum Technologies, Inc., supra*.

In addition, there is no evidence that Contextlogic has been unjustly enriched by its use of its WISH® mark. An award of profits under the theory of unjust enrichment might be available if there was evidence that Contextlogic's sales were attributable to its alleged infringing use of the Wish Atlanta Mark. *Optimum Technologies, Inc.*, 2005 WL 3307509 at *3. There is no such evidence here. Wish Atlanta can identify no sales that Contextlogic has made trading on the good will that Wish Atlanta may have in the Wish Atlanta Mark. (Statement of Facts, ¶¶ 33-35). Indeed, many of the sales facilitated by Contextlogic under its WISH® mark are for goods not offered by Wish Atlanta. (Statement of Facts, ¶ 17). For all of these reasons, Wish Atlanta cannot prevail on its claim for Contextlogic's profits under an unjust enrichment theory. *Optimum Technologies, Inc., supra*.

Finally, there is no evidence to support an award of Contextlogic's profits as a sanction necessary for future deterrence. This is not a situation in which, for example, the defendant adopted and used a famous mark such as BURGER KING®. *See, e.g., Burger King Corp., supra.* To the extent there has been any confusion between Wish Atlanta and Contextlogic (a claim that Contextlogic vigorously denies) that alleged confusion was wholly unintentional on Contextlogic's part and has not resulted in any benefit to Contextlogic. As a result, no sanction is necessary or appropriate. *See Optimum Technologies, Inc., supra*.

For all of these reasons, Wish Atlanta's claim for an accounting of Contextlogic's profits should be dismissed on summary judgment.

## V. WISH ATLANTA'S CLAIM FOR ATTORNEY'S FEES SHOULD BE DISMISSED.

Count Seven of Wish Atlanta's complaint seeks recovery of expenses and attorney's fees. (ECF 1 at 9). Attorney's fees may be recoverable under Lanham Act claims pursuant to 15 U.S.C. § 1117, and under O.C.G.A. § 10-1-373(b). An award of attorney's fees is not appropriate under either of these statutes.

The court has discretion to award attorney's fees under the Lanham Act to a prevailing party in an "exceptional case." 15 U.S.C. § 1117(a). Exceptional cases are those in which the infringing party acts in a malicious, fraudulent, deliberate, or willful manner. *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001) (affirming denial of award of attorney's fees due to absence of evidence of fraud or bad faith). An "exceptional case" exists when, for example, a defendant deliberately arranges to obtain counterfeit goods and to pass off such goods as genuine goods originating from the plaintiff. *Playboy Enters., supra*, 546 F. Supp. at 999. There is no such evidence here. Contextlogic was unaware of Wish Atlanta and the Wish Atlanta Mark at the time that it adopted its own WISH® mark. (Statement of Facts, ¶ 27). Contextlogic uses an entirely different logo and presentation in the use of its WISH® mark as compared to Wish Atlanta's use of its Wish Atlanta Mark. (Statement of Facts, ¶¶ 3, 12 and 13). Moreover, many of the goods offered by Contextlogic are not even of the type of goods that are offered by Wish Atlanta. (Statement of Facts, ¶ 17). In short, the facts of the present case do not present a fact pattern under which Wish Atlanta can support a claim for attorney's fees. As a result, its claim for fees under 15 U.S.C. § 1117(a) should be dismissed.

O.C.G.A. § 10-1-373 provides that the court, in its discretion, may award attorney's fees to the prevailing party if "[t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." O.C.G.A. § 10-1-373(b)(2). In this

y

case there is no evidence that Contextlogic has engaged in a deceptive trade practice, much less that it "willfully engaged in the trade practice knowing it to be deceptive." The facts set out in the previous paragraph establish the lack of any willfully improper activity, and the lack of any deceptive intent, on the part of Contextlogic. As a result, attorney's fees are not recoverable under O.C.G.A. § 10-1-373. For these reasons, summary judgment should be entered in Contextlogic's favor on all of Count Seven.[3]

## VI. WISH ATLANTA'S CLAIM FOR ENHANCED DAMAGES AND PUNITIVE DAMAGES SHOULD BE DISMISSED.

Wish Atlanta seeks "treble damages" under its Lanham Act claims. (ECF 1 at 13). As only Counts One and Two of the Complaint seeks recovery of money damages under the Lanham Act, those are the only counts that might entitle Wish Atlanta to enhanced damages.[4]

15 U.S.C. § 1117(a) provides:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times expenses and attorney's fees. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

As noted above, Wish Atlanta is not entitled to recover either damages or Contextlogic's profits in this case. As a result, the court need not proceed to the issue of enhanced damages. – those damages are unavailable because there are no compensatory damages to support them. *See Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1183 (enhanced damages "must be based on a showing of actual harm").

---

[3] Count Seven also seeks recovery of "expenses of the litigation." (ECF 1 at 9). To the extent that this extends to costs recoverable by a prevailing party under 15 U.S.C. § 1117(a) or Fed. R. Civ. P. 54, Contextlogic does not seek summary judgment in its favor on an award of costs at this time.

[4] Count Three, alleging trademark dilution under 15 U.S.C. §1125(c), does not seek monetary damages of any type.

Even if Wish Atlanta's claim for compensatory damages or an award of profits were to survive summary judgment, any enhancement of those damages would be inappropriate. As noted at 11-12, *supra*, there is no evidence that would serve as a basis for enhanced damages. Contextlogic acted in good faith in adopting and using its mark and was not even aware of Wish Atlanta or the Wish Atlanta Mark at the time it adopted its own WISH® mark.

Wish Atlanta's claim for punitive damages under its state law claims should also be dismissed on summary judgment. To be entitled to punitive damages, the plaintiff must establish, by clear and convincing evidence, that "defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. The record supports no such claim here.

## VII.   CONCLUSION.

For the reasons set out above, summary judgment should be entered in Contextlogic's favor on Counts Three, Seven and Nine of Wish Atlanta's complaint, and on Wish Atlanta's claims for an accounting of Contextlogic's profits, for recovery by Wish Atlanta of compensatory damages, expenses and attorney's fees.

Respectfully submitted this 15th day of June, 2015.

      */s/ Dwight D. Lueck*
Dwight D. Lueck (pro hac vice)
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel. (317) 231-1313
Email: dwight.lueck@btlaw.com

        Jeffrey C. Morgan
        Georgia Bar No:  522667
        BARNES & THORNBURG, LLP
        Prominence in Buckhead
        3475 Piedmont Rd. NE, Suite 1700
        Atlanta, Georgia  30305
        Tel.  (404) 264-4015
        Fax. (404) 264-4033
        Email: jeff.morgan@btlaw.com

        Robert C. Martin, Jr.
        Georgia Bar No:  473886
        HATCHER STUBBS
        233 12th Street, Suite 500
        P.O. Box 2707
        Columbus, GA  31902-2707
        Tel. (706) 243-6239
        Fax (706) 322-7747
        Email:  rcm@hatcherstubbs.com

        ATTORNEYS FOR DEFENDANT
        CONTEXTLOGIC, INC.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| WISH ATLANTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | 4:14-CV-00051-CDL |
| CONTEXTLOGIC, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2015, the undersigned caused a true and correct copy of this ***Memorandum in Support of Contextlogic's Motion for Partial Summary Judgment*** to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

F. Lee Champion, III
Travis C. Hargrove
PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.
1111 Bay Avenue, Third Floor
Columbus, Georgia 31901

/s/ *Dwight D. Lueck*
Dwight D. Lueck (pro hac vice)

Attorney for Defendant
Contextlogic, Inc.

INDS02 DDL 1369596v1

17