# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| WISH ATLANTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | 4:14-CV-00051-CDL |
| CONTEXTLOGIC, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF PETER SZULCZEWSKI

I, Peter Szulczewski, declare and state as follows:

1. I am over the age of 18 and suffer no disability which would prevent me from testifying truthfully.

2. I am co-founder and Chief Executive Officer of Contextlogic, Inc. ("Contextlogic"), the defendant in the pending lawsuit. Based on my involvement in Contextlogic, I have first-hand knowledge of the facts set forth in this Declaration.

3. Contextlogic is a Delaware corporation with its principal place of business at 20 California Street, Suite 400, San Francisco, California.

4. Beginning in November 2011, Contextlogic began operating a website located at www.wishwall.me. Since November 2012, after it acquired the domain name www.wish.com, it has operated its website at the www.wish.com address (the "Wish Website").

5. That website allows users to, among other things, discover, collect and inform others about products shown on the website. A user, for example, may compile a "wish list" of products that he or she shares with other users of the website. Compiling "wish lists" such as these remain the predominant use of the website.

6. Since, October 28, 2012, the website has also allowed users to purchase products from suppliers other than Contextlogic. The identity of the supplier is shown on the website. Contextlogic is not a retailer and offers no products of its own for sale through the website. Rather, Contextlogic facilitates the sales of products offered by third party merchants, much as a shopping mall would facilitate sales in a brick and mortar shopping mall. In return, Contextlogic receives a small transaction fee of 10% to 15% for facilitating the transaction.

7. Since April 2012, Contextlogic has offered its products and services through an application that can be downloaded for free on to smartphones and other personal electronic devices (the "Wish App").

8. The Wish App offers many of the functions available to a user over the Wish Website, including the ability to purchase products offered by third party merchants.

9. The Wish App and the Wish Website function as a virtual shopping mall. Users may see and purchase everything from maternity clothing to home décor to clothing and fashion, fishing equipment and even kitchen sinks.

10. Millions of users have downloaded the Wish App since it was first offered.

11. The Wish App became more popular than the Wish Website soon after the Wish App was first offered. Currently 90% or more of the transactions facilitated by Contextlogic are conducted through the Wish App rather than through the Wish Website. Contextlogic has not promoted consumer use of the website since it launched the Wish App.

12. Only about one third of the registered users of the Wish App reside in the United States.

13. The Wish App and the Wish Website are targeted primarily at women. 60-65% of transactions that take place through the Wish App or the Wish Website are conducted by women.

14. Contextlogic first learned of Wish Atlanta, LLC, the plaintiff in this case, and that entity's Wish trademark, when it received a cease and desist letter from the attorneys for Wish Atlanta in February, 2014.

I declare under penalty of perjury that the foregoing is true and correct.



Dated:  June 12, 2015

Peter Szulczewski