IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| WISH ATLANTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | 4:14-CV-00051-CDL |
| CONTEXTLOGIC, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CONTEXTLOGIC'S TRIAL BRIEF

This case concerns relief that Plaintiff, Wish Atlanta, LLC ("Wish Atlanta"), seeks based on rights it contends to have in the common law trademark WISH, in the registered design mark **wish**, and in the trade name WISH ATLANTA.[1] Wish Atlanta uses these marks and trade name in connection with a brick and mortar store in Atlanta selling "street wear" clothing, shoes and related items, and a website offering many of the same items. The evidence will establish that these marks and trade name are extremely weak, based in part on the many other WISH registered and common law trademarks used in connection with the sale of clothing and apparel by others not affiliated with Wish Atlanta.

Defendant, Contextlogic, Inc. ("Contextlogic"), uses its own WISH trademark in connection with an app (the "Wish App") and website that offer a wide variety of goods and services. It has obtained its own registered WISH® trademark for some of these services. The

---

[1] Counts One, Two, Four, Five and Six are based, in whole or in part, on Wish Atlanta's alleged rights in the word mark WISH. Counts Ten and Eleven are based on alleged rights in the registered design mark **wish**. Count Four is based on alleged rights in the trade name WISH ATLANTA and in the mark WISH. Wish Atlanta has withdrawn Counts Three and Nine. (ECF 39 at 1).

evidence will establish that Contextlogic presents its WISH mark to the public in a very different way from the way Wish Atlanta presents its WISH mark to the public; that the two parties offer predominantly different goods and services under their respective marks; that the parties use different sales methods, with Wish Atlanta operating primarily through a brick and mortar store selling goods it owns, and Contextlogic offering an app that connects buyers and sellers of goods that Contextlogic does not own; that the parties target their products and services to different customers; and that the parties use different advertising methods.   The evidence will also establish that Contextlogic had no intent to trade on whatever rights Wish Atlanta has in its WISH marks, nor has actual confusion been created.  As a result, the evidence will establish that Contextlogic's adoption and use of its WISH mark has created no likelihood of confusion between Wish Atlanta and itself.   For these reasons, judgment should be entered in Contextlogic's favor on Wish Atlanta's trademark and trade name claims.

The evidence will further establish that, even if Contextlogic were found to have created a likelihood of confusion between itself and Wish Atlanta by use of its own WISH mark, no equitable or injunctive relief is needed or appropriate.  For these reasons, judgment should be entered in favor of Contextlogic.

## I.      THERE ARE DIFFERENCES BETWEEN THE WISH ATLANTA "WORD MARK" AND "DESIGN MARK" THAT IMPACT THE SCOPE OF RIGHTS THAT WISH ATLANTA MAY CLAIM UNDER THOSE MARKS.

Wish Atlanta bases its claims in this case on two marks, the design mark **wish** (the "Design Mark") for which it holds two federal trademark registrations, and the common law "word mark" WISH.  A "word mark" is a mark in which the mark owner holds trademark rights in the word regardless of how that word may be depicted.  A "design mark," by contrast, only affords trademark protection to the design.  To the extent a word is incorporated into the design,

that word is considered, but only in the context of the overall commercial impression of the design mark. *Intertape Polymer Corp. v. Inspired Technologies, Inc.*, 725 F. Supp.2d 1319, 1328 (M.D. Fla. 2010) ("where the mark consists of both words and a design the mark must be considered in its entirety"). In addition, to the extent that the word incorporated into the design mark is a generic or merely descriptive word, the word component of the design mark commands less importance. *See, e.g.*, *Robarb Inc. v. Pool Builders Supply of the Carolinas, Inc.*, 696 F. Supp. 621, 630 (N.D. Ga. 1988) ("generic words or phrases, even when they are incorporated by a business as a portion of its trademark or trade dress, may be freely used by competitors.").

Wish Atlanta asserts common law rights in the word mark WISH, as opposed to registered trademark rights. As a result, it must establish it has trademark rights in the mark, and the geographic scope of those common law rights. *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010). The evidence will establish that many other entities use the word "wish" in connection with the sale of clothing and apparel, making any "wish" mark weak in connection with the sale of those goods. In addition, to the extent Wish Atlanta uses the word mark WISH, it does so primarily through a brick and mortar store located in Atlanta. Thus, to the extent it has any trademark rights to assert based on its use of the word mark WISH, those rights are geographically limited. *Id.* Also, none of the presumptions that apply to a registered trademark, such as constructive notice of the mark under 15 U.S.C. § 1072, extend to a common law mark.

## II.   CONTEXTLOGIC HAS NOT CREATED A LIKELIHOOD OF CONFUSION WITH WISH ATLANTA BY ITS ADOPTION AND USE OF ITS OWN WISH MARKS.

To prevail on its trademark infringement and unfair competition claims, Wish Atlanta must prove that Contextlogic created a likelihood of confusion by adopting and using its own

WISH trademark.[2]  For example, to establish infringement of Wish Atlanta's registered Design Mark (Counts Ten and Eleven of the Complaint), Wish Atlanta must show (1) that Contextlogic used the mark in commerce, without the trademark holder's consent; and (2) that the use was likely to cause confusion.  *ITT Corp. v. Xylem Group, LLC*, 963 F. Supp.2d 1309 (N.D. Ga. 2013).

To establish common law trademark infringement of the word mark WISH under Section 43(a) of the Lanham Act (Counts One and Two of the Complaint), "plaintiff must show '(1) that it ha[s] trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that [is] the same, or confusingly similar to its mark."  *Tana*, 611 F.3d at 773 (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)).

Wish Atlanta must establish these same two elements to prove its claims of state law unfair competition (Count Five of the Complaint) and violation of the Georgia Deceptive Trade Practices Act (Count Six of the Complaint).  *University of Georgia Athletic Assoc. v. Laite*, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985) ("most of the claims under Georgia [trademark and deceptive trade practices] law are similar, if not identical, to those under the Lanham Act"); *Robarb*, 696 F. Supp. at 629 n.3 (the same likelihood of confusion analysis used in assessing claims under the Lanham Act is used in assessing state common law and Deceptive Trade Practices Act claims).

Contextlogic does not dispute that Wish Atlanta has trademark rights in the Design Mark, and limited trademark rights in the weak word mark WISH in connection with the sale of clothing and apparel through a brick and mortar store in Atlanta.  In addition, Contextlogic does

---

[2] The only claim for which Wish Atlanta need not establish a likelihood of confusion is its claim of state law trademark and trade name dilution (Count Four) which is addressed below.

not dispute that it has acted without the authorization of Wish Atlanta.  Thus, the fundamental question at trial will be whether Contextlogic's use of its WISH trademark "is likely to cause an appreciable number of potential buyers to be confused about the source, affiliation or sponsorship of [Contextlogic's] products."  *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp.2d 1302, 1315 (N.D. Ga. 2008); *John H. Harland Co., v. Clarke Checks, Inc.*, 711 F.2d 966, 979 n. 22 (11th Cir. 1983) (the confusion at issue is the "confusion in the mind[s] of an appreciable number of 'reasonably prudent' buyers.'").

The Eleventh Circuit identified the factors to be considered in evaluating whether a likelihood of confusion exists in *Tana, supra*:

> In evaluating whether there is a likelihood of confusion between two marks, our court applies a multifactor test, evaluating the following seven factors:  (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Welding Servs.*, 509 F.3d at 1360.

611 F.3d at 774-775.  *See also, Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984) (same).  The evidence presented at trial will establish that each of these factors favors Contextlogic and, as a result, Wish Atlanta cannot establish the likelihood of confusion needed for it to be eligible for an accounting of Contextlogic's profits, injunctive or other relief.

A.    <u>Strength of the Mark.</u>

The first element considered in a likelihood of confusion analysis is the strength of the marks being asserted by the plaintiff.  This analysis begins with an assessment of the distinctiveness of the asserted marks.  The Eleventh Circuit recognizes four categories of distinctiveness, listed in ascending order of strength:  (1) generic; (2) merely descriptive; (3)

suggestive; and (4) arbitrary.   Suggestive and arbitrary marks are deemed "inherently distinctive."   Generic marks, on the other hand, are deemed incapable of receiving trademark protection.  Descriptive marks, though not inherently distinctive, may become sufficiently distinctive to enjoy trademark protection by acquiring "secondary meaning."   *Tana*, 611 F.3d at 774.

In regard to the word mark WISH, the evidence will establish that the mark in connection with the sale of clothing and apparel is extremely weak and does not rise above the level of being a "merely descriptive" mark.   Evidence will show that many others have obtained trademark registrations or have made common law uses of the word "wish" in connection with the sale of clothing and apparel.   In light of these facts, it is clear that the word "wish" standing alone is merely descriptive.   *See Giant Mart Corp. v. Giant Discount Foods, Inc.*, 247 Ga. 775, 279 S.E.2d 683, 686 (1981) (trial court erred in affording protection to the trade name "Giant" because the word "is a descriptive term commonly used in the grocery business" that "may not be exclusively appropriated as part of a trade name."); *Deltona Transformer Corp. v. Wal-Mart Stores, Inc.*, 115 F. Supp.2d 1361, 1366-67 (N.D. Ga. 2000) (mark "Battery Tender" merely descriptive for a battery charger).[3]

Wish Atlanta may seek to argue that any rights it holds in the WISH word mark are strong because that mark has acquired secondary meaning.   "Secondary meaning is the connection in the consumer's mind between the mark and the provider of the product or service. A high degree of proof is necessary to establish secondary meaning for a descriptive term which suggests the basic nature of the product or service."   *Deltona*, 115 F. Supp.2d at 1366 (citations

---

[3] Contextlogic holds two registrations for the word mark WISH but they are in connection with services not related specifically to the sale of clothing and apparel.  Wish Atlanta has withdrawn any challenges it made to Contextlogic's rights in these two marks.  (ECF 39 at 1).

omitted).    A plaintiff may meet this burden by consumer survey evidence.  *Id.*  Contextlogic anticipates that Wish Atlanta may seek to do so in this case.  However, that survey evidence will show, if anything, that Wish Atlanta has established no secondary meaning in the word mark WISH.

Absent survey evidence establishing secondary meaning, Wish Atlanta must produce other evidence establishing its success in causing consumers to associate its mark with Wish Atlanta:

> Absent survey evidence, the factors to consider in whether a mark acquired secondary meaning are:  (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by a plaintiff to promote a conscious connection in the public's mind between the mark and plaintiff's product or services.

*Deltona*, 115 F. Supp.2d at 1366, citing *Conagra*, 743 F.2d at 1513.

The evidence will show that Wish Atlanta has failed to establish secondary meaning under these standards.  It has made limited sales over a relatively few years of operation in a narrow geographic territory, has spent little on advertising, and has not made sufficient efforts "to promote a conscious connection in the public's mind between the mark and plaintiff's product or services" to establish secondary meaning in the word mark WISH.  For these and all of the reasons set out above, any rights that Wish Atlanta holds in the word mark WISH are extremely weak.

Third party use of a mark is important in considering the strength of the mark, even if that mark is more than a "merely descriptive" mark.  The more third parties use the mark for the same or related goods or services, the weaker it is. *Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Ass'n*, 651 F.2d 311, 316 (5th Cir. 1981) (reversing trial court's permanent injunction against use of the word "sun" as part of defendant's business name, in part because of

the common use of that word by third parties as part of their trademarks).  When seeking registration of its Design Mark back in 2007, Wish Atlanta was aware of numerous trademark registrations and applications for marks incorporating the word "wish" in connection with the sale of clothing and apparel.  The evidence will establish that many entities other than Wish Atlanta have obtained registrations for their own WISH marks or make common law use of those marks.  Thus, consumers are conditioned not to assume that a product is being offered by Wish Atlanta merely because it is offered under the word mark WISH.

The evidence will establish that Wish Atlanta has been aware of at least one entity (other than Contextlogic) using a WISH mark.  Nevertheless, aside from the instant lawsuit, it has done nothing to prevent those other entities from adopting, using and registering their own WISH marks.  This further establishes the weak nature of both the WISH word mark and the Design Mark, and weakens any claim that Wish Atlanta has in its marks.

Finally, in assessing the strength of a common law mark, such as the word mark WISH, the court must consider the geographic scope of Wish Atlanta's activities.  "[W]here a plaintiff holds only common-law trademark rights in a mark . . . it is well-established that the scope of protection accorded his mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade."  *Tana,* 611 F.3d at 780.  In *Tana,* for example, the court concluded that plaintiff's rights in its common law mark were weak outside of Los Angeles, where plaintiff operated a restaurant under the trademark he asserted in the case.  *Id*. at 776.  In this case, the evidence will show that over 80% of the business Wish Atlanta conducts is conducted through its brick and mortar store located in Atlanta.  To the extent the Wish Atlanta's word mark WISH has any strength, it is only in that geographic area.

So, the evidence will establish that the word mark WISH is extremely weak in connection with the offer for sale of clothing and apparel because it is merely descriptive, it is commonly used by many other entities, Wish Atlanta has made relatively little use of the mark, that use has been geographically restricted, and Wish Atlanta has made no efforts to restrict third parties, other than Contextlogic, from using a "wish" mark.  As a result, Wish Atlanta cannot claim broad trademark rights based in the word mark WISH.

In regard to Wish Atlanta's Design Mark the word component of the mark is extremely weak for all of the reasons set out above.  In addition, Wish Atlanta cannot claim broad protection of the design component of the mark because there are numerous registrations and common law uses of design marks, used in connection with the sale of clothing and apparel, that incorporate the word "wish" into their designs, including:









In light of these many other designs, consumers would be conditioned to pay attention to the specific design component of the mark, rather than assume that any design incorporating the "wish" into it emanates from a particular source.  So, to the extent that Wish Atlanta asserts

trademark rights based on its Design Mark, those rights are extremely weak outside of the very specific design on which it obtained registered trademark protection.

For all of these reasons, both the WISH word mark and the Design Mark are extremely weak and merit only narrow protection. Because the marks are weak, "reasonably prudent buyers" would not assume that goods came from or were associated with Wish Atlanta if they encountered another entity's WISH mark in commerce.

      B.    <u>Similarity of the Infringed and Infringing Marks.</u>

In considering the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999). Differences in the manner in which the marks are presented to the public are very important. For example, in *Corpro Cos., Inc. v. Meier*, 2007 WL 2320625 (M.D. Ga. 2007), this Court held that the parties' use of marks incorporating the initials "CCI" were "very different" because, among other things, the design element used by one of the parties in connection with its mark was distinctive. *Id.* at *4. Similar evidence will establish that the marks in this case are very different.

The evidence will show that to the extent Wish Atlanta uses the mark WISH, it is used almost exclusively as part of the Design Mark, rendered in black. The very specific form of that design is important. Indeed, in defining its Design Mark to the United States Patent and Trademark Office, Wish Atlanta carefully defined the design as "the letters "w", "i", "s" and "h", where the dot from the "i" is offset to the right and slightly over the left side of the "s" to form the image of a person."

In contrast, Contextlogic's use of a "wish" related mark is almost always used in connection with its own design, rendered in blue:



That design does not "form the image of a person."  Rather, it creates a very different commercial impression that does not create a likelihood of confusion between Contextlogic and Wish Atlanta.  In addition, Contextlogic's use of its WISH mark is often paired with the tagline "Shopping Made Fun."  This different presentation of its WISH mark by Contextlogic further reduces any likelihood of confusion between the parties.

      C.      <u>Similarity Between the Goods and Services Offered Under the Two Marks.</u>

The evidence will establish that Wish Atlanta uses its marks in connection with the sale of "street wear" clothing and accessories.  This includes "high fashion" items such as extremely expensive baseball caps and jeans.  It also extends to limited edition designer shoes.

Contextlogic, by contrast, offers a wide variety of products and services under its WISH mark.  A user of the WISH App may, for example, compile a "wish list" of products that he or she shares with other users of the WISH App.  This aspect of Contextlogic's app was so important to Contextlogic that it obtained two trademark registrations for the word mark WISH for use in connection with these services.  Wish Atlanta offers no comparable services.

As an additional component of the services Contextlogic offers under its WISH App, Contextlogic facilitates in the sale of goods offered by various vendors.  In this respect, the WISH App functions as a virtual shopping mall, allowing users to see and purchase everything from maternity clothing to home décor, fishing equipment and even kitchen sinks.  Most of the goods sold through Contextlogic's WISH App are not clothing or apparel.

The differences between the goods and services offered by the parties are so significant that Wish Atlanta's President was not able to identify any sales Wish Atlanta has lost as a result

of Contextlogic's activities.  Indeed, Wish Atlanta's sales have increased since Contextlogic began offering products through its WISH App, and Wish Atlanta has given up any claims to money damages based on its own lost sales.

At trial, Wish Atlanta may seek to fall back on broad, undifferentiated claims that both parties offer clothing.  That is not enough in assessing the similarity of goods and services offered by the parties.  In broad categories such as clothing or food, the specific type of goods being offered is very important.  For example, in *Tana, supra*, the court found no likelihood of confusion between plaintiff restaurant, which used the mark DAN TANA'S, and defendant restaurant, which used the mark DANTANNA'S, in large part because of the differences in the food offered by the parties.  Plaintiff offered an "an-old-world-style Italian restaurant where mustached waiters dressed in tuxedos serve classic Italian dishes. . . .  In stark contrast, [defendant] Dantanna's in Atlanta is an upscale sports restaurant."  These "stark differences between the parties' restaurants" was an important factor in finding that no likelihood of confusion existed between the two.  611 F.3d at 778.  Similarly, in the present case, the evidence will establish that the stark differences in the goods and services offered by the two parties prevent any likelihood of confusion.

D.      Similarity of the Actual Sales Methods Used by the Parties.

"Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake or deception." *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 262 (5th Cir.) (reversing judgment that the DOMINO'S Pizza mark infringed the DOMINO sugar mark based, in part, on the different commercial outlets and primary customers for the products offered under the parties' respective DOMINO marks), *cert. denied,* 449 U.S. 899 (1980).

Here, the parties use radically different sales methods in selling their goods and services. Over 80% of Wish Atlanta's sales are made through a brick and mortar store located in Atlanta. Less than 20% of its sales are made through its website, www.wishatl.com, offering products that are also offered in its brick and mortar store.  It has no app that may be loaded on to a prospective consumer's cell phone.  In all instances, Wish Atlanta functions as a traditional retailer, buying the clothing and accessories that it then sells to customers through its brick and mortar store and website.

The evidence will show that Wish Atlanta's target market is African American males located in the Atlanta metropolitan area, which makes sense since most of its sales are made through its brick and mortar store in Atlanta.

Contextlogic, by contrast, has no brick and mortar store.  The evidence will establish that the vast majority of its sales are made through the WISH App.  Only approximately 10% of its sales are made through its website, www.wish.com, and sales through that website have never been extensive.  In addition, Contextlogic does not own the products offered through it WISH App.  Rather, to the extent is offers products, it does so as an electronic marketplace, such as eBay, rather than as a traditional retailer.  Its app makes this distinction clear to the users of that app.

The evidence will show that Contextlogic's target market is primarily women rather than men.  Moreover, the majority of the registered users of its WISH App do not even reside in the United States.

All of these factors weigh strongly against any likelihood of confusion being created by Contextlogic's use of its WISH mark in connection with its goods and services.

E.     Similarity of Advertising Methods.

It is difficult to distinguish between the advertising methods of the parties because, as the evidence will show, Wish Atlanta has spent very little on advertising.  The evidence will show that it has spent money on stickers and buttons.  It promotes its products on "social platforms." It has also spent some money on internet key word advertising, but not recently.

Contextlogic, by contrast, has invested significant resources in advertising and promoting its WISH App.  These resources are spent almost exclusively on electronic advertising, including key word advertising and placing advertising on websites such as Facebook® to attract users of those sites to Contextlogic.

These stark differences in advertising and promotional efforts weigh heavily against a conclusion of a likelihood of confusion between the parties.

F.     Intent of Contextlogic.

The evidence will establish that Contextlogic had no intent to trade on whatever goodwill Wish Atlanta has in its marks when Contextlogic adopted and began use of its WISH mark. Indeed, Wish Atlanta was not even aware of Wish Atlanta or Wish Atlanta's marks before it received a cease and desist letter from counsel for Wish Atlanta.  Moreover, there will be no evidence that Contextlogic intended to trade on any goodwill that Wish Atlanta may have in its mark after receiving the cease and desist letter from counsel for Wish Atlanta.

Wish Atlanta will likely note that Contextlogic had constructive knowledge of Wish Atlanta's two Design Mark registrations, which registered before Contextlogic began use of its own WISH mark.  To the extent this presumption of constructive knowledge exists, it is limited to the Design Mark depicted in those registrations, not to common law trademark claims.  15 U.S.C. § 1072.  Since Wish Atlanta is asserting only common law claims against Contextlogic in regard to the word mark WISH, no presumption of constructive knowledge extends to Wish

Atlanta's use of the word mark WISH.  Moreover, constructive knowledge is of little impact in assessing Contextlogic's intent in adopting and using its own WISH mark.  In fact, McCarthy went so far as to write:  "the existence of constructive notice is not evidence that a later user necessarily intended to confuse."  4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 23:109 (4th ed. 1995).

In light of these facts, the element of intent tips sharply in favor of Contextlogic.

G.     Evidence of Actual Confusion.

Wish Atlanta may seek to introduce evidence at trial purportedly establishing "actual confusion" between Wish Atlanta and Contextlogic.  To the extent some of this evidence may be admitted, it is important to recognize that not all confusion constitutes "actual confusion" in a "likelihood of confusion" analysis.  Mere inadvertence on the part of the person sending a letter or making a phone call does not constitute actual confusion.  *See., e.g., Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Publishing Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) (receipt by plaintiff of letters and phone calls apparently meant for defendant "show[s] inattentiveness on the part of the caller or sender rather than actual confusion.").  Misdirected communications prompted by a sloppy or incomplete internet search do not constitute actual confusion.  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002) (discounting misdirected email communications because "[a] consumer using a popular Internet search engine to locate an email address for [defendant] could find [plaintiff's] website if he or she mistakenly conducted a search for 'thermascan' rather than 'thermoscan.'").

In addition, the type of alleged confusion is relevant in determining whether "actual confusion" exists.  "Short lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight while confusion of actual customers of a business is worthy of

15

substantial weight." *Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010).

Plaintiff bears the burden to establish that any alleged confusion constitutes "actual confusion" rather than inattentiveness on the part of the caller or sender.  For example, in *Holiday Inns, Inc. v. Holiday Out in America*, 351 F. Supp. 537 (S.D. Fla. 1972), the court refused to give weight to evidence of allegedly misdirected letters, holding:

> Without more [than the letters themselves], it is rank speculation to assume that defendants' advertising or defendants' use of the mark caused the letter writers or unnamed third parties to believe there to be a business association between plaintiff and defendants.

351 F. Supp. at 542, *aff'd*, 481 F.2d 445, 449 (5th Cir. 1973) ("we agree with the trial court that [the letters were] of insufficient probative value to rise to the level of showing actual confusion caused by a similarity in the marks").

To the extent that Wish Atlanta introduces admissible evidence of confusion at trial, it will be in the nature of confusion engendered by inattentiveness on the part of the consumer rather than on "defendants' advertising or defendants' use of the mark[s]" at issue in the case.

Moreover, the evidence at trial will establish that whatever confusion that may exist is *de minimis*.  Wish Atlanta has engaged in many thousands of transactions since Contextlogic began operations, and has received thousands of telephone calls during that time.  During that same period, Contextlogic has assisted its users in millions of transactions through the WISH App.  To the extent there is evidence of "actual confusion, it is *de minimis* confusion that does not create a likelihood of confusion between the parties.  *See Tana*, 611 F.3d at 779 ("Dantanna's has served over one million customers in the five years between its opening and the filing of this lawsuit; no reasonable jury would conclude that an inquiry by only two customers of a possible connection

between the restaurants demonstrates actual confusion in the consuming public."); *Duluth News-Tribune*, 84 F.3d at 1078 (evidence of occasional misdirected telephone calls and mail was *de minimis*).

For all of these reasons, the "actual confusion" prong is neutral or tips slightly in favor of Contextlogic.  In light of this and the facts that will be introduced at trial concerning the other elements in a likelihood of confusion analysis, Wish Atlanta **will not** be able to establish that Contextlogic has created a likelihood of confusion by its adoption and use of its own WISH mark.  As a result, judgment should be entered in Contextlogic's favor on Counts One, Two, Five through Eight, Ten and Eleven of the Complaint.

## III.   WISH ATLANTA CANNOT PREVAIL ON ITS CLAIMS OF STATE LAW SERVICE MARK AND TRADE NAME DILUTION.

Under Count Four of its Complaint, Wish Atlanta pursues a claim for service mark and trade name dilution under O.C.G.A. 10-1-451(b).  This counts differs from the other counts of the Complaint in that Wish Atlanta need not prove that Contextlogic has created a likelihood of confusion to be entitled to relief under O.C.G.A. 10-1-451(b).  As a result, it is treated separately.

Section 451(b) provides that the Court may enjoin "use by another of the same or any similar trademark, trade name, label, or form of advertisement if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the trademark [or] trade name[.]"  So, in regard to its trademark claim, Wish Atlanta must establish that there is a "distinctive quality" in the trademark it seeks to protect.  The evidence will establish that there is no "distinctive quality" in the word mark WISH used in connection with the sale of clothing and accessories sufficient to warrant protection under O.C.G.A. 10-1-451(b). As a result, Wish Atlanta cannot base a trademark dilution claim on that word mark. *See Giant Mart Corp.*, 279

17

S.E.2d at 686 (trial court erred in affording protection to the trade name "Giant" because the word "is a descriptive term commonly used in the grocery business" that "may not be exclusively appropriated as part of a trade name.").   Similarly, any trade name claim based on Wish Atlanta's trade name, WISH ATLANTA, fails because the only component that name has in common with Contextlogic's activities, use of the word "wish," constitutes use of a word commonly used in the sale of clothing and apparel.  *Id.* ("While we find that the phrase 'Giant Discount Foods' constitutes a trade name capable of protection, we find that the word 'Giant' . . . may not be exclusively appropriated as a trade name.").

To the extent that Wish Atlanta seeks to base a trademark dilution claim on its Design Mark, that claim fails because Contextlogic has not appropriated the "distinctive quality of the mark," which is the design component of that mark.

Wish Atlanta appears to seek relief under the Statute based on alleged harm to its business reputation.  The evidence will not support such a claim.  None of Contextlogic's actions have harmed Wish Atlanta's business reputation.   Tellingly, Wish Atlanta has given up any claims for money damages from Contextlogic for any alleged harm to its business reputation.  In addition, the evidence will show that the business reputation of Wish Atlanta is checkered at best, leaving little, if anything, to be protected.  For all of these reasons, Wish Atlanta will not be able to prove its claims under O.C.G.A. 10-1-451(b).

## IV.   WISH ATLANTA IS NOT ENTITLED TO AN ACCOUNTING OF CONTEXTLOGIC'S PROFITS.

As established above, the evidence will not support a finding that Contextlogic is liable to Wish Atlanta under any of the trademark and state law claims asserted by Wish Atlanta.  As a result, there is no basis for Wish Atlanta to demand an accounting of Wish Atlanta's profits under 15 U.S.C. § 1117.   Contextlogic will, nevertheless, address the law concerning an

accounting because that law further establishes that Wish Atlanta is not entitled to an accounting of Contextlogic's profits, even if Wish Atlanta were to establish a likelihood of confusion.

    A.    <u>The Facts Will Establish That Wish Atlanta Does Not Have a Right to Seek an Accounting.</u>

An accounting for profits is appropriate where:  (1) the defendant's conduct is a deliberate and willful violation of plaintiff's rights; (2) the infringer is unjustly enriched; or (3) the sanction is necessary for future deterrence.  *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990).  There is no evidence supporting an award of profits for any of these reasons.

Willfulness is evidenced when the defendant is "knowingly and deliberately cashing in upon the good will" of the trademark owner.  *Optimum Technologies, Inc. v. Home Depot USA*, *Inc.*, 2005 WL 3307509 at *3 (N.D. Ga. Dec. 5, 2006) (granting partial summary judgment in defendant's favor on plaintiff's claim for defendant's profits, citing *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988)), *aff'd*, 217 Fed. Appx. 899 (11th Cir. 2007).   In this case, there will be no evidence that Contextlogic "knowingly and deliberately cash[ed] in upon the good will" of Wish Atlanta.  Rather, the evidence will show that Contextlogic was unaware of Wish Atlanta and the Wish Atlanta Mark at the time that it adopted its own WISH mark.  Contextlogic uses an entirely different logo and presentation in the use of its WISH mark as compared to Wish Atlanta's use of its Wish Mark.  It uses a different business model and offers different goods and services than Wish Atlanta offers.  All of these facts show that there has been no "deliberate and willful violation" of whatever rights Wish Atlanta may have in its mark that would entitle Wish Atlanta to an accounting of Wish Atlanta's profits.  *Optimum Technologies, Inc., supra*.

In addition, there will be no evidence that Contextlogic has been unjustly enriched by its use of its WISH mark.  An award of profits under the theory of unjust enrichment might be available if there was evidence that Contextlogic's sales were attributable to its alleged infringing use of Wish Atlanta's mark.  *Optimum Technologies, Inc.*, 2005 WL 3307509 at *3. There will be no such evidence here.  Wish Atlanta can identify no sales that Contextlogic has made trading on the good will that Wish Atlanta may have in the WISH mark.  Indeed, many of the sales facilitated by Contextlogic under its WISH mark are for goods not even offered by Wish Atlanta.  For all of these reasons, Wish Atlanta cannot prevail on its claim for Contextlogic's profits under an unjust enrichment theory.  *Optimum Technologies, Inc., supra*.

Finally, the evidence will not support an award of Contextlogic's profits as a sanction necessary for future deterrence.  This is not a situation in which, for example, the defendant adopted and used a famous mark such as BURGER KING®.  *See, e.g., Burger King Corp., supra*.  To the extent there has been any confusion between Wish Atlanta and Contextlogic (a claim that Contextlogic vigorously denies) that alleged confusion was wholly unintentional on Contextlogic's part and has not resulted in any benefit to Contextlogic.  As a result, no sanction is necessary or appropriate.  *See Optimum Technologies, Inc., supra*.

For all of these reasons, the facts will not support a claim by Wish Atlanta for an accounting of profits Contextlogic earned under its use of the WISH mark.

B.     The Facts Will Establish That Contextlogic Has Not Obtained Profits That Could Be Awarded to Wish Atlanta if an Accounting Were Appropriate.

If Wish Atlanta were to establish a right to seek an accounting of Contextlogic's profits, the facts would establish that there are no profits to award.  Any profits awarded must take into account "costs or deductions" claimed by the defendant.  15 U.S.C. § 1117(a).  The facts will establish that Contextlogic has realized no profits in the activities it has engaged upon under its

WISH mark.  In fact, it has lost revenue on those activities because of expenses it has incurred in promoting its business, including extensive advertising expenses.  In addition, the evidence will establish that most of the sales of products Contextlogic has facilitated under its WISH mark are for products not offered by Wish Atlanta, further reducing the amount of theoretical profits to which Wish Atlanta might lay claim.  For all of these reasons, an award of profits would be improper even if Wish Atlanta were able to establish a right to an accounting under 15 U.S.C. § 1117.

**V.      WISH ATLANTA IS NOT ENTITLED TO AN AWARD OF TREBLE DAMAGES, ATTORNEYS' FEES OR PUNITIVE DAMAGES.**

At trial, Wish Atlanta will fail to introduce facts establishing liability on the part of Contextlogic that would serve as the basis for an award of treble damages, attorneys' fees or punitive damages.  As a result, these remedies are not available to Wish Atlanta.  These extraordinary remedies sought by Wish Atlanta are also not available for the reasons set out below.

A.      <u>No Claims Remain on Which Wish Atlanta Could Recover Treble Damages.</u>

Wish Atlanta seeks "treble damages" under its Lanham Act claims.  (ECF 1 at 13).  Wish Atlanta is not entitled to "treble damages" because it cannot establish liability.  In addition, under 15 U.S.C. § 1117(a), treble damages may only be assessed on money damages suffered by the plaintiff, not on defendant's profits.  As McCarthy observed in his treatise on trademark law:

> A district court must treat an increase in "damages" separately and under a different analysis than an increase in a recovery of the infringer's "profits," because they are authorized by different statutory provisions with different criteria for a judicial increase.

J. Thomas McCarthy, <u>Trademarks and Unfair Competition</u> § 30:90 at 30-229 (2013).  *But see Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1183 (stating, without reference to

this statutory distinction, that the court may, "in its discretion, reduce or enhance the resulting award up to three times the amount of profits or damages").

Wish Atlanta has given up all claims for money damages. (ECF 39 at 4). Consequently, it no longer has a claim on which treble damages could be based. As a result, its claim for treble damages should be dismissed on summary judgment. That claim should also be denied because Wish Atlanta will fail to introduce evidence that it has been harmed, a prerequisite to a claim for enhanced damages. *See Babbit Electronics, Inc.,* 38 F.3d at 1183 (enhanced damages "must be based on a showing of actual harm").

B.   Wish Atlanta Is Not Entitled to Recovery of Its Attorneys' Fees.

Count Seven of Wish Atlanta's Complaint seeks recovery of expenses and attorney's fees. (ECF 1 at 9). Fees and expenses are not appropriate here because Wish Atlanta cannot establish liability. In addition, although attorney's fees may be recoverable under Lanham Act claims pursuant to 15 U.S.C. § 1117, and under O.C.G.A. § 10-1-373(b), an award of attorney's fees is not appropriate under either of these statutes.

The court has discretion to award attorney's fees under the Lanham Act to a prevailing party in an "exceptional case." 15 U.S.C. § 1117(a). Exceptional cases are those in which the infringing party acts in a malicious, fraudulent, deliberate, or willful manner. *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001) (affirming denial of award of attorney's fees due to absence of evidence of fraud or bad faith). An "exceptional case" exists when, for example, a defendant deliberately arranges to obtain counterfeit goods and to pass off such goods as genuine goods originating from the plaintiff. *Playboy Enters., Inc. v. P.K. Sorren Export Co.,* 546 F. Supp. 987, 999 (S.D. Fla. 1982). There will be no such evidence here. Contextlogic was unaware of Wish Atlanta and the Wish Atlanta Mark at the time that it adopted its own WISH mark. Contextlogic uses an entirely different logo and presentation in the use of its WISH mark

as compared to Wish Atlanta's use of its marks.  Moreover, many of the goods offered by Contextlogic are not even of the type of goods that are offered by Wish Atlanta, and the methods that Contextlogic uses to promote and sell goods are different from those used by Wish Atlanta. In short, the facts of the present case do not present a fact pattern under which Wish Atlanta can support a claim for attorney's fees.  As a result, it cannot prevail on its claim for fees under 15 U.S.C. § 1117(a).

O.C.G.A. § 10-1-373 provides that the court, in its discretion, may award attorney's fees to the prevailing party if "[t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." O.C.G.A. § 10-1-373(b)(2).  In this case there will be no evidence that Contextlogic has engaged in a deceptive trade practice, much less that it "willfully engaged in the trade practice knowing it to be deceptive."  As a result, attorney's fees are not recoverable under O.C.G.A. § 10-1-373.  For these reasons, judgment should be entered in Contextlogic's favor on all of Count Seven.

C.     Wish Atlanta Is Not Entitled to an Award of Punitive Damages.

To be entitled to punitive damages under its state law claims, Wish Atlanta must establish, by clear and convincing evidence, that "defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1.  The facts of this case will support no such claim to this extraordinary relief.

VI.     WISH ATLANTA IS NOT ENTITLED TO THE INJUNCTIVE RELIEF IT SEEKS.

As discussed above, the evidence will show that Wish Atlanta is entitled to no relief because Contextlogic has not infringed any of Wish Atlanta's trademark or trade name rights. Even if the Court were to conclude otherwise, though, the expansive injunctive relief sought by

Wish Atlanta is grossly inappropriate and not supported by the facts of the case. In *SunAmerica Corp v. Sun Life Assurance Company of Canada*, 77 F.3d 1325, 1335-1336 (11th Cir. 1996), the Eleventh Circuit identified the factors to be considered in awarding injunctive relief in a trademark case:

> Section 34(a) of the Lanham Act directs district courts to apply traditional equitable principles when fashioning injunctive relief in trademark cases: "The several courts vested with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, *according to the principles of equity and upon such terms as the court may deem reasonable*…." 15 U.S.C.A. § 1116(a) (West Supp. 1995) (emphasis added). Equitable principles require consideration of the unique circumstances of each case, with due regard for flexibility, practicality, and the public interest:
>
>> The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.
>
> *Hecht Co. v. Bowles*, 321 U.S. 321, 329-30, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944).
>
> In trademark cases, the scope of the injunction to be entered depends upon the manner in which plaintiff is harmed, the possible means by which that harm can be avoided, the viability of the defenses raised, and the burden that would be imposed on defendant and the potential effect on competition between the parties…. "The law requires that courts closely tailor injunctions to the harm that they address."
>
> 4  J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30.03 [1] (4th ed. 1995) (quoting *ALPO Petfoods v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C.Cir. 1990)).

> Therefore, we have stated that "[t]he equitable relief that is granted should be only that which is required to distinguish the two products, and no more." *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1270 (5th Cir. 1971).

77 F.3d at 1335-35.

These same factors are considered in determining whether injunctive relief is appropriate under Wish Atlanta's state law claims. *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, 2003 WL 22331254 at *29 n.4 (N.D. Ga. May 9, 2003) ("the standards to be applied under the Lanham Act are similar, if not identical, to those to be applied under Georgia's trademark laws."); *University of Georgia Athletic Assoc., supra* (applying the same standard under federal and state law in determining injunctive relief).

By its Complaint, Wish Atlanta seeks the extraordinary remedy of an injunction stopping Contextlogic from continued use of its own WISH mark. Such an injunction is not warranted because, as noted above, Contextlogic has created no likelihood of confusion which would serve as a basis for such an injunction. Moreover, the relief demanded by Wish Atlanta is not appropriate under the facts that will be presented at trial. Contextlogic offers different goods and services, to a different set of consumers, using different promotional and business methods. The differences in services is so marked that Contextlogic has obtained its own registered trademarks for the mark WISH® for use in connection with many of those services.

Wish Atlanta has not been harmed by Contextlogic's actions. Wish Atlanta has not lost sales to Contextlogic. Indeed, Wish Atlanta's sales have increased since Contextlogic first adopted and began use of its own WISH® mark. In contrast, Contextlogic would suffer extraordinary transition expenses and loss of goodwill if it were compelled to cease use of its WISH® mark. In addition, any injunction against its use of its WISH® mark would have the impact of divesting Contextlogic of its rights in its own WISH® registered trademarks; it would

25

be impractical to continue use of those trademarks for the services offered under those marks if Contextlogic could no longer facilitate sales of goods between vendors and users of its WISH App under the WISH mark.   Quite simply, an injunction prohibiting Contextlogic from continuing to use its own WISH® mark is wholly inappropriate and contrary to the fundamental principles controlling the award of injunctive relief.

Wish Atlanta also seeks an order requiring Contextlogic to assign the domain name www.wish.com to Wish Atlanta.  (ECF 1 at 12).  The facts will not support such relief.  Indeed, the facts will establish that Wish Atlanta had an opportunity to purchase that domain name before it was acquired by Contextlogic, but decided not to do so because it did not want to pay the purchase price demanded by the then-owner of the domain name.  In seeking an award of the www.wish.com domain name, Wish Atlanta is not seeking appropriate relief in this case. Rather, it is seeking to use this lawsuit as a means to appropriate property – Contextlogic's domain name – without paying for that domain name.

For all of these reasons, no injunctive relief is appropriate, even if Wish Atlanta were to establish the liability of Contextlogic under any of the federal or state claims asserted against Contextlogic in the complaint.

Respectfully submitted this 7th day of October, 2015.


   */s/ Dwight D. Lueck*   
Dwight D. Lueck (pro hac vice)
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel. (317) 231-1313
Email: dwight.lueck@btlaw.com

Jeffrey C. Morgan
Georgia Bar No: 522667
BARNES & THORNBURG, LLP
Prominence in Buckhead
3475 Piedmont Rd. NE, Suite 1700
Atlanta, Georgia 30305
Tel. (404) 264-4015
Fax. (404) 264-4033
Email: jeff.morgan@btlaw.com

Robert C. Martin, Jr.
Georgia Bar No: 473886
HATCHER STUBBS
233 12th Street, Suite 500
P.O. Box 2707
Columbus, GA 31902-2707
Tel. (706) 243-6239
Fax (706) 322-7747
Email: rcm@hatcherstubbs.com

ATTORNEYS FOR DEFENDANT
CONTEXTLOGIC, INC.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

WISH ATLANTA, LLC,                    )
                                      )
        Plaintiff,                    )
                                      )        CIVIL ACTION FILE NO.
v.                                    )
                                      )        4:14-CV-00051-CDL
CONTEXTLOGIC, INC.,                   )
                                      )
                                      )
        Defendant.                    )

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2015, the undersigned caused a true and correct copy of this **Contextlogic's Trial Brief** to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

F. Lee Champion, III
Travis C. Hargrove
PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.
1111 Bay Avenue, Third Floor
Columbus, Georgia 31901

/s/ *Dwight D. Lueck*
Dwight D. Lueck (pro hac vice)

Attorney for Defendant
Contextlogic, Inc.

INDS02 DDL 1382200v1

28